Brian S. King, #4610
Brent Newton, #6950
Nediha Hadzikadunic, #15851
**BRIAN S. KING, P.C.**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES C., individually and on behalf of M.C., a minor.<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS and BLUE SHIELD, and the CFA INSTITUTE KEYCARE MEDICAL PLAN.<br><br>Defendants. | COMPLAINT<br><br>2:19-cv-00038 PMW |

Plaintiff James C. ("James") individually and on behalf of M. C. ("M.") a minor, through his undersigned counsel, complains and alleges against Defendants Anthem Blue Cross and Blue Shield ("Anthem") and the CFA Institute KeyCare Medical Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. James is a natural person residing in Essex County, New Jersey. James is M.'s father.

1

2. Anthem is an independent licensee of the nationwide Blue Cross and Blue Shield network of providers. Anthem is an insurance company and was the third-party claims administrator for the Plan during the treatment at issue.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). James was a participant in the Plan and M. was a beneficiary of the Plan at all relevant times.

4. M. received medical care and treatment at Maple Lake Academy ("Maple Lake"). Maple Lake is a licensed residential treatment facility located in Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Anthem denied claims for payment of M.'s medical expenses in connection with her treatment at Maple Lake. This lawsuit is brought to obtain the Court's order requiring Anthem to pay M.'s unpaid expenses incurred during treatment.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because the treatment at issue took place in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants'

violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

//

## BACKGROUND FACTS

### Maple Lake

9. M. was admitted to Maple Lake on June 30, 2016, and was discharged on November 13, 2017. Anthem denied payment for this treatment in its entirety in a series of Explanation of Benefits ("EOB") statements.

10. On October 16, 2017, James submitted a level one member appeal of the denial of M.'s treatment at Maple Lake. He wrote that while Anthem's EOBs did not all give the same justification for denying care, the predominant reason given was:

> Your benefit plan requires review of all hospital admission. [sic] Therefore, we have asked your provider to supply us with a copy of your medical records and an itemized list of all the charges associated with your treatment. We will be happy to reopen your claim for consideration when we receive this additional information.

11. James alleged that Anthem was in violation of ERISA and asked it to provide detailed and specific examples of the reasoning for its adverse benefit determination. He alleged that he had been given a variety of different EOBs with different reasons for denying payment. He argued that Anthem had not resolved its errors despite numerous attempts on his part to resolve its concerns.

12. James included a list of the EOBs he had received up until that point with the appeal, as well as the reasons that Anthem had given for its denials, he summarized them as follows:

3

> 6/28/16-11/30/16: Medical records not received within 45 days
> 12/1/16-12/31/16: "Not Covered" exclusion
> 1/1/17-5/31/17: Medical records not received within 45 days
> 6/1/17-6/30/17: Lack of medical necessity
> 7/1/17-7/31/17: No EOB, website says denied
> 8/1/17-9/30/17: Claim not processed

13. James wrote that he had sent out M.'s medical records to Anthem, that the records had been verified as delivered, and that he had the tracking information to prove it. He stated that he had contacted Anthem multiple times through a representative to try and sort out his denied EOBs. He provided reference numbers for these calls, and wrote that on at least one of these occasions, the denial rationale given by the Anthem representative did not match what had been written in the EOB.

14. James wrote in the appeal that on July 20, 2017, after Anthem continued to claim it lacked medical records, he sent it a second set of medical records which had also been confirmed as delivered.

15. He contended that Anthem's EOB from December of 2016 reflected an administrative error on its part, as it was the only EOB to deny coverage on the pretext that the treatment at Maple Lake was excluded because it was not a covered service. James wrote that residential treatment was clearly listed under the terms of the Plan as a covered benefit.

16. He wrote that while the Plan contained a provision where residential treatment could be excluded if it was for "rest cures, custodial, residential, or domiciliary care and services," and did not meet other metrics such as 24-hour care, Maple Lake was licensed by the State of Utah as a residential treatment facility and the services provided included "24-hour care, daily assessments, professional nursing care, daily physician visits, and therapeutic services." James claimed that because Maple Lake did not meet the Plan's definition of an excluded service, M.'s treatment should not have been denied.

4

17. James argued that Anthem made another administrative error in its June 2017 EOB. He contended that it was nonsensical for Anthem to claim that M.'s care was not medically necessary in that EOB, while simultaneously claiming in its other EOBs that it could not evaluate the medical necessity of M.'s treatment because it lacked medical records. James submitted a third copy of M.'s medical records with the appeal.

18. James requested that in the event Anthem maintained the denial that it provide him with a copy of all governing plan documents, and any mental health and substance use criteria "including skilled nursing facility and rehab criteria" utilized to evaluate the claim.

19. In a letter dated February 19, 2018, Anthem maintained its denial of payment for M.'s treatment. Anthem gave the following justification for the denial:

> …A medical doctor (M.D.) who is board certified and specializes in psychiatry reviewed the appeal. We reviewed all the information that was given to us before with the first request for coverage. We also reviewed all that was given to us for the appeal. Your doctor wanted you to have residential treatment center care. The reason we were given for this was that you were at risk for serious harm without 24 hour care. We understand that you would like us to change our first decision. Now we have new information the medical record plus letters. We still do not think this was medically necessary for you. We believe our first decision is correct for the following reason. You were not at risk for serious harm that you needed 24 hour care. [sic] You could have been treated with other services. We based this decision on this health plan guideline. (Psychiatric Disorder Treatment – Residential Treatment Center (RTC) (CG-BEH-03)).
>
> You don't have coverage for services or supplies if they are deemed not medically necessary as determined by Anthem at its sole discretion…
>
> In the appeal letter concerns are raised with the outcome on several of the EOBs spanning dates June 28, 2016 to November 14, 2017, as well as information given during incoming calls. Please be advised that that [sic] due to the outcome of the appeal all claims in question in the appeal letter will be adjusted to reflect the decision of Not Medically Necessary and new EOBs will be produced for your reference.
>
> The appeal letter goes on to request that per ERISA we are to provide details, examples and reasons for the final determination. Please know that this appeal was reviewed using health plan guideline Psychiatric Disorder Treatment –

> Residential Treatment Center (RTC) (CG-BEH-03) as mentioned above in my rationale. This guideline will be forwarded for your review under a separate cover in your Relevant Document Packet as well as the additional information that has been requested.
>
> Finally, there is a request to provide all names, qualifications and healthcare denial rates of all individuals who reviewed these services or with whom was [sic] consulted. The law doesn't require us to provide an accounting of each person who accessed your information to carry out:
>
> - Treatment;
> - Payment; or
> - Health Care Operations.
> …

20. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

21. The denial of benefits for M.'s treatment was a breach of contract and caused James to incur and pay medical expenses that should have been paid by the Plan in an amount totaling over $176,000.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

22. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

23. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

24. Anthem and the Plan breached their fiduciary duties to M. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in M.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of M.'s claims.

25. The actions of Anthem and the Plan in failing to provide coverage for M.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

26. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

27. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

28. Specifically, MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

29. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider

specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

30. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Anthem exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner Anthem excluded coverage of treatment for M. at Maple Lake.

31. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Anthem, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

32. The violations of MHPAEA by Anthem and the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and Anthem insured plans as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

(g) An order equitably estopping the Defendants from denying the Plaintiffs claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

(i) In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for M.'s medically necessary treatment at Maple Lake under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

3. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants'

    violation of MHPAEA;

4.  For such further relief as the Court deems just and proper.

    DATED this 17th day of January 2019.

              By  s/ Brian S. King
                  Brian S. King
                  Attorney for Plaintiffs

County of Plaintiffs' Residence:
Essex County, New Jersey.