## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **JAMES C., individually and on behalf of M.C., a minor.** | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS** |
| **Plaintiffs,** | |
| **vs.** | |
| **ANTHEM BLUE CROSS AND BLUE SHIELD, and the CFA INSTITUTE KEYCARE MEDICAL PLAN,** | **Case No.  2:19-cv-38** |
| **Defendants.** | **Judge Clark Waddoups** |

Before the court is Defendants Anthem Blue Cross and Blue Shield and CFA Insttiute Keycare Medical Plan's Renewed Motion to Dismiss (ECF No. 43), which seeks to dismiss Count II of Plaintiffs' Amended Complaint.  The motion has been fully briefed, and the court heard argument on the same at a hearing held on June 10, 2020.  For the reasons stated herein, Defendants' motion is **DENIED**.

## BACKGROUND

Plaintiff M. is the minor child of Plaintiff James C.  (Amend. Compl., ECF No. 39 at ¶ 1). At all times relevant to this action, James C. was a participant in the CFA Institute KeyCare Medical Plan (the "Plan"), a self-funded employee welfare benefits plan administrated by defendant Anthem Blue Cross and Blue Shield ("Anthem" and together with the Plan, "Defendants"), the third-party claims administrator for the Plan.  (*Id.* at ¶¶ 2–3).  At all times relevant to this action, M. was a beneficiary of the Plan.  (*Id.* at ¶ 3).

M. received medical care and treatment at Maple Lake Academy, a facility that provides treatment to adolescents with mental health, behavioral, and/or substance abuse problems, from

June 30, 2016 through November 13, 2017.  (*Id*. at ¶¶ 4, 9).  Anthem denied coverage for M.'s treatment on the basis that M.'s treatment was not medically necessary.  (*Id*. at ¶¶ 5, 9, 19).  Plaintiffs appealed the denial, but it was upheld.  (*Id*. at ¶¶ 10–20).  By a final letter dated February 19, 2018, Anthem maintained the denial of benefits on the basis that the treatment was not medically necessary as M. was "not at risk for serious harm that . . . needed 24 hour care" and that M. "could have been treated with other services."  (*Id*. at ¶ 19).  In their appeals, Plaintiffs requested copies of Plan documents, but those requests were ignored.  (*Id.* at ¶ 18).  As a result of Defendants' denial, Plaintiffs incurred over $176,000.00 in medical expenses for M.'s treatment.  (*Id*. at ¶ 39).

Plaintiffs initiated this action on January 17, 2019 by filing a two-count complaint that alleged that Defendants' denial constituted a breach of its fiduciary duties to M. and a violation of ERISA and that Defendants violated The Mental Health Parity and Addiction Equity Act (the "Parity Act") by inconsistently utilizing and applying the terms of the Plan between mental health and medical/surgical treatments.  (*See* Compl., ECF No. 3).  Defendants moved to dismiss Plaintiffs' Parity Act claim (ECF No. 8), and in response, Plaintiffs moved to amend their Complaint (ECF No. 20).  The court held a hearing on both motions on November 21, 2019, and thereafter issued an order directing Defendants to produce to Plaintiffs six pieces of information that Plaintiffs argued were necessary to allow them to properly amend their complaint.  (ECF No. 38).  Defendants provided Plaintiffs with that information, Plaintiffs filed an Amended Complaint (ECF No. 39), and Defendants' motion to dismiss was denied as moot.  (*See* ECF No. 42).  Defendants now renew their original motion to dismiss, arguing that the Plaintiffs' amended Parity Act claim should be dismissed because the Amended Complaint fails to allege sufficient facts to support the claim and because the claim is duplicative of Plaintiffs' ERISA claim.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In assessing Defendants' motion, this court must "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

### I.    Plaintiffs' Parity Act claim contains sufficient facts that when accepted as true show it is plausible that Defendants violated the Parity Act.

"[T]he Parity Act is designed 'to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans.'" *Candace B. v. Blue Cross*, No. 2:19-cv-39, 2020 WL 1474919, at *4 (D. Utah Mar. 25, 2020) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)). As such, "a health plan that provides medical and surgical benefits as well as mental health or substance abuse benefits cannot 'impose more restrictions on the latter than it imposes on the former.'" *Id.* (quoting *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1233 (D. Utah Sept. 27, 2019)). One key category of such restrictions, and that which is relevant here, is "treatment limitations," which includes "both quantitative treatment limitations, which are expressed numerically . . . and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for

3

treatment under a plan or coverage."  *See* 29 C.F.R. § 2590.712(a).

As is more fully discussed below, Plaintiffs' Amended Complaint argues that Defendants have adopted and/or asserted five nonquantitative treatment limitations that violate the Parity Act.  Under the Parity Act, "[a] group health plan . . . may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan . . . as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification."  29 C.F.R. § 2590.712(c)(4)(i).  In short, "an insurer violates the Parity Act if it employs 'a nonquantitative limitation for mental health treatment that is more restrictive than the nonquantitative limitation applied to medical health treatments.'"  *Candace B*., 2020 WL 1474919, at *4 (quoting *David S. v. United Healthcare Ins. Co.*, No. 2:18-cv-803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019)).

Because the Tenth Circuit has not yet "promulgated a test to determine what is required to state a claim for a Parity Act violation . . . this court has adopted a three-part analysis."  *Nancy S. v. Anthem Blue Cross & Blue Shield*, No. 2:19-cv-231, 2020 WL 2736023, at *3 (D. Utah May 26, 2020) (citations omitted).  Under this test, a plaintiff asserting a violation of the Party Act must "(1) identify a specific treatment limitation on mental health benefits, (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits, and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that

defendants would apply to the covered medical/surgical analog." *Id.* (internal quotations and citations omitted).

At oral argument on their motion to dismiss, Defendants acknowledged that skilled nursing facilities and hospice care centers are covered by the Plan and analogous to residential treatment centers like Maple Lake Academy where M. received treatment. As such, the second prong of the test is not at issue here. As to the first prong, Plaintiffs' Amended Complaint identifies the following five nonquantitative treatment limitations that the Plan places on mental health treatment that they allege violate the Parity Act:

1. the Plan's definitions of Residential Treatment Centers and analogous skilled nursing facilities supports that increased restrictions are placed on Residential Treatment Centers (Amend. Compl., ECF No. 39 at ¶¶ 23–24);

2. Defendants have made its requirements for care at residential treatment centers (as set forth in the Guidelines) stricter over time (*id.* at ¶¶ 27–28);

3. Defendants apply nonquantitative treatment limitations such as "short-term" restrictions to residential treatment centers but not to analogous medical or surgical care such as skilled nursing facilities and sub-acute care (*id.* at ¶ 32);

4. the Guidelines require an evaluation to be completed by a qualified physician within 48 hours of treatment commencing in a residential treatment center, but no like requirement exists for skilled nursing care (*id.* at ¶¶ 35–36); and

5. the Guidelines require a patient in a residential treatment center to receive individual treatment with a qualified physician and a licensed behavioral health clinician at least once a week, but only require "active physician direction with frequent on-site visits" for subacute care. (*Id.*).

Thus, the only remaining issue, and the focus of Defendants' motion to dismiss, is whether Plaintiffs' Amended Complaint plausibly alleges a disparity between these treatment limitations as compared to limitations that Defendants apply to analogous medical/surgical treatment. The court, accepting Plaintiffs' well-pled factual allegations as true, finds that it does.

Plaintiffs' first alleged improper treatment limitation, that the Plan's Summary Plan Description contains a detailed definition of a Residential Treatment Center but a very generic definition of a skilled nursing facility, even when accepted as true, does not, by itself, make it plausible that Defendants actually *imposed* more restrictions on residential treatment centers than on skilled nursing facilities in violation of the Parity Act.  While it would indeed be a violation of the Parity Act if Defendants imposed the "restrictions" contained in the Summary Plan Description's definition of Residential Treatment Center but did not impose comparable restrictions on skilled nursing facilities, the lone fact that the definition of skilled nursing facilities set forth in the Summary Plan Description did not expressly contain such restrictions does not mean that they did not exist and were not imposed.

Similarly, Plaintiffs' second alleged improper limitation, that Defendants made their requirements for care at residential treatment centers more strict over time, even when accepted as true, does not constitute a violation of the Parity Act, as it does not allege that comparable restrictions on comparable medical/surgical treatment *did not* also become more strict over the same period.

In response to Plaintiffs' third alleged improper treatment limitation, that "short-term" restrictions are impermissibly applied to residential treatment centers but not to skilled nursing facilities and sub-acute care, Defendants assert three arguments: first that the claim "is simply not true," as is shown by the fact that "the medical-necessity guidelines for residential treatment centers include criteria for *a continued stay*"; second that the Guidelines do not "require" short-term care but instead only state that "'[t]here should be a reasonable expectation' that the patient's condition will improve and that 'a short term, subacute residential treatment service will have a likely benefit' on the patient's condition"; and third that there is "no actionable disparity

6

in coverage" because comparable medical and surgical treatment medical-necessity guidelines
"impose similar expectations regarding short-term improvement."  (ECF No. 43 at 14–15).  Each
of these arguments overlooks that Plaintiffs are making an *as applied* challenge to the Plan's
limitation.

Violations of the Parity Act need not be express.  Rather, "disparate treatment limitations
that violate the Parity Act can be either *facial* (as written in the language or the processes of the
plan) or *as-applied* (in operation via application of the plan)."  *Peter E. v. United HealthCare
Servs., Inc.*, No. 2:17-cv-435, 2019 WL 3253787, at *3 (D. Utah July 19, 2019) (emphasis in
original); *see also Michael W.*, 420 F. Supp. 3d at 1235.  As such, under the Parity Act, unequal
or discriminatory application of a plan's facially neutral limitations is illegal.  *See Anne M. v.
United Behavioral Health*, No. 2:18-CV-808, 2019 WL 1989644, at *2 (D. Utah May 6, 2019)
("Under an as-applied challenge, a plaintiff may 'allege an impermissible mental-health
exclusion "in application"—as opposed to a facial attack relying solely on the terms of the plan
at issue.'" (quoting *A.Z. by & through E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1081–
82 (W.D. Wash. 2018))); *see also Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F.
Supp. 3d 1159, 1176 (D. Utah 2019).  Thus, Plaintiffs' allegations do not fail simply because
they have not pointed to a specific plan language and limitations that only apply to mental health
treatment.

Plaintiffs' as-applied challenge alleges that Defendants apply short-term criteria to deny
long-term treatment at residential treatment centers more frequently, and disproportionately, than
they did long-term treatment at skilled nursing facilities.  If this is true, and at this stage the court
must accept that it is, it is plausible that Defendants have violated the Parity Act.  *See* 29 C.F.R.
§ 2590.712(c)(4)(ii)(H) (prohibiting restrictions based on "criteria that limit the scope or duration

of benefits for services provided under the plan or coverage"). Moreover, Plaintiffs allege that evidence of Defendants' limitation of coverage to only short-term treatment is found in "internal statements from the Anthem's reviewers that were involved in denying the claim." (Amend. Compl., ECF No. 39 at ¶¶ 29–31). It is clear that additional discovery is needed in order for Plaintiffs to more fully develop this claim and more substantially prove their allegations. Because Plaintiffs have pled enough to survive Defendants' motion to dismiss, they are entitled to conduct that discovery.

In light of the as-applied nature of Plaintiffs' allegations, Defendants' specific arguments against Plaintiffs' third alleged improper treatment limitation are of no consequence. The fact that "continued stays" are permitted under the Plan for residential treatment centers does not save Defendants from Plaintiffs' claim if in practice Defendants did not actually approve such stays. Similarly, if Defendants are in fact disproportionally citing the lack of a "reasonable expectation that the patient's condition will improve" as a basis for denying coverage, it does not matter that short-term care is not expressly "required" under the Plan or that "comparable medical and surgical treatment medical-necessity guidelines 'impose similar expectations regarding short-term improvement.'"

Defendants argue that Plaintiffs' fourth alleged improper treatment limitation—that the Guidelines require patients in residential treatment centers, but not skilled nursing care, to undergo an evaluation by a qualified physician within 48 hours—is improper because "[n]owhere in the Amended Complaint does Plaintiff allege that the residential treatment center claims were denied because of this 48-hour physician evaluation requirement." (ECF No. 43 at 10). The governing regulations makes it improper for *any* "nonquantitative treatment limitation" to be imposed that is not "comparable to" limitations for "medical/surgical benefits in the

classification."  29 C.F.R. § 2590.712.  As discussed herein, at this stage of the proceedings, Plaintiffs have pled sufficient facts and allegations for their case to proceed.  Once discovery is conducted, if it is determined that this 48-hour requirement was not a factor relied on by Defendants to deny coverage, this claim may ultimately fail.  But at this point, the court is satisfied that Plaintiffs are entitled to determine whether these requirements contributed to their claim being denied, and as such, constituted a potential violation of the Parity Act.

Defendants also attack the merits of Plaintiffs' fourth allegation, asserting that the allegation is "not true," as the guidelines "on their face" require "[s]imilar medical/surgical treatments require consultation with a doctor within short order, even if not spelled out."  (ECF No. 43 at 10, n. 5).  Defendants further explain that "skilled nursing medical-necessity guidelines require a detailed plan to be made upon admission, with daily treatment beginning upon a physician's orders" and that "[l]ikewise, treatments for acute inpatient rehabilitation and subacute inpatient care patients must be prescribed by a physician and patients are expected to show improvement 'within a maximum of seven (7) to fourteen (14) days' of admission."  (*Id*.).  Defendants' argument is not well taken, as clearly, "within short order" and within "seven to fourteen days" are not the same as, but are instead less restrictive than, "within 48 hours."  Further, Defendants cannot rely on policies that are "not spelled out" to argue that Plaintiffs' Parity Act challenge is meritless. (ECF No. 43 at 10, n. 5).  Rather, the fact that Defendants have unwritten, but nonetheless governing, policies reaffirms the importance, and merits, of Plaintiffs' as-applied challenges.

Finally, Defendants argue that Plaintiffs' fifth alleged improper treatment limitation— that the Guidelines disproportionately require a patient in a residential treatment center to receive individual treatment with a qualified physician and a licensed behavioral health clinician at least

once a week, but only require "active physician direction with frequent on-site visits" for subacute care—is also not true, as "the medical/surgical guidelines at issue *do impose* comparable minimum requirements for physician visits," as   (ECF No. 43 at 9 (emphasis in original)).  Specifically, Defendants cite to guidelines for inpatient subacute care that require "[a]ctive physician direction with frequent on-site visits."  (*Id.* at 10).  Again, requiring "frequent on-site visits" is not the same as requiring at least weekly visits, and Defendants have failed to provide any support for their argument that the two are comparable.  As such, when accepted as true, Plaintiffs' allegation makes is plausible that Defendants have violated the Parity Act.

The court recognizes that Plaintiffs' claims may not prevail after discovery and trail and that the Amended Complaint does not allege facts to which Defendants may have no defenses under the Parity Act.  But at this stage of this litigation, they do not need to.  Rather, they only need to state sufficient "factual content [to allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Free Speech*, 720 F.3d at 792 (10th Cir. 2013).  Plaintiffs have do so here and are therefore entitled to move forward with their claims and to conduct discovery on the same in order to better develop, substantiate, and prove those claims, and more importantly, to develop a full record that permits the court to decide this case on its merits.

## II.   Plaintiffs' claims under the Parity Act are distinct.

Defendants also move to dismiss Plaintiffs' Parity Act claim on the basis that it is wholly subsumed within Plaintiffs' first cause of action for denial of benefits under 29 U.S.C. § 1132(a)(1)(B).  While Plaintiffs' ERISA claim under § 1132(a)(1)(B) seeks to recover the benefits due to them under the Plan, namely the $176,000.00 they have incurred in medical expenses, their claims under § 1132(a)(3) allege violations of the Parity Act and seek, among other things, "[a]n

injunction ordering the Defendants to cease violating [the Parity Act] and requiring compliance with the statute"; "[a]n order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants . . ."; and "an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and Anthem insured plans as a result of the Defendants' violations of [the Parity Act]." (*See* Amend. Compl., ECF No. 39 at ¶ 55). Such requests are not subsumed within Plaintiffs' request for payment of benefits. Rather, they are precisely the type of "other appropriate equitable relief" that ERISA permits Plaintiffs to obtain. *See* 29 U.S.C. § 1132(a)(3). Indeed, as Judge Parrish recently recognized in *Michael W.*, 2019 WL 4736937 at *12, n. 9, the Supreme Court's holding in *Varity Corp. v. Howe*, 516 U.S. 489 (1996) "recognizes that [29 U.S.C. § 1132(a)(3)] may be used to pursue claims for equitable relief that are not available in other sections of ERISA." Here, Plaintiffs' § 1132(a)(3) claims for equitable relief for violations of the Parity Act are distinct from their § 1132(a)(1)(B) claims for denial of benefits "in terms of the nature of the alleged harm, the theory of liability, the ERISA enforcement mechanism, and the relief sought." *See id.* Plaintiffs are therefore not barred from asserting these distinct claims in concert.

## <u>CONCLUSION</u>

For the reasons discussed herein, Defendants' Motion to Dismiss (ECF No. 43) is **DENIED**.

DATED this 24th day of June, 2020.

BY THE COURT:

Clark Waddoups
United States District Judge